UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARRISON T. NAKAYAMA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | Case No. C06-1709-MJP<br><br>ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY INSURANCE BENEFITS |

The Court, having reviewed the entire record, including Plaintiff's Opening Brief (Dkt. No. 12), Defendant's Responsive Brief (Dkt. No. 13), the Report and Recommendation of the Honorable Monica J. Benton (Dkt. No. 14), United States Magistrate Judge, and the Administrative Record [hereinafter "AR"], files it own opinion and AFFIRMS the Commissioner's decision denying disability for the reasons set forth below.

**BACKGROUND**

On August 25, 2003, Plaintiff filed an application for Disability Insurance Benefits alleging disability since January 30, 2002. (AR at 56-58.)  Plaintiff claimed inability to work due to chronic fatigue syndrome, fibromyalgia, sleep apnea, depression and diabetes. (AR at 28, 32, 67.) Plaintiff's application was denied initially and on reconsideration. (AR at 26-30, 32-33.)  A hearing was held on May 3, 2006 before an Administrative Law Judge ("ALJ"). (AR at 445.) Plaintiff, who was represented by counsel, testified at the hearing. (AR at 446-461.)  On August 3, 2006, the ALJ issued an unfavorable decision finding Plaintiff not disabled within the meaning of the Social Security Act. (AR at 12-25.)

On October 5, 2006, the Appeals Council denied Plaintiff's request for review, making the

ORDER — 1

1   ALJ's decision the final determination of the Commissioner.  (AR at 2-5.)  Plaintiff timely filed his

2   appeal in the United States District Court.

3                                          **DISCUSSION**

4   **I.      Legal Standard**

5          The Commissioner's decision must be affirmed if supported by substantial evidence and if

6   the Commissioner applied the correct legal standards.  Benton v. Barnhart, 331 F.3d 1030, 1035

7   (9th Cir. 2003).  Under this standard, the Commissioner's findings are upheld if supported by

8   inferences reasonably drawn from the record.  See Gallant v. Heckler, 753 F.2d 1450, 1452-53

9   (9th Cir. 1984).  If evidence exists to support more than one rational interpretation, we must defer

10  to the Commissioner's decision.   See Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir.

11  1999).

12  **II.     Determining Disability**

13         To establish whether he qualifies for benefits, Plaintiff has the burden of proving an

14  "inability to engage in any substantial gainful activity by reason of any medically determinable

15  physical or mental impairment which...has lasted or can be expected to last for a continuous period

16  of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a

17  five-step sequential evaluation process for determining whether a claimant has met this standard.

18  20 C.F.R. § 404.1520.  At step one, the ALJ must determine whether the claimant is engaged in

19  substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, the ALJ then must determine at step

20  two whether the claimant's impairments are "severe" within the meaning of the regulations.  20

21  C.F.R. § 404.1520(c).

22         If the impairments are "severe," then at step three the ALJ must compare the claimant's

23  impairments to the impairments listed in the "Listing of Impairments" set out in Appendix 1 to 20

24  C.F.R. § 404.  20 C.F.R. § 404.1520(d).  If any "severe" impairment equals a listed impairment,

25  the claimant must be found to be disabled.   However, if a decision as to whether a "severe"

26  impairment corresponds to a listed impairment cannot be made on medical factors alone, the ALJ

27

ORDER — 2

1   must proceed to the final two steps in the sequential evaluation process.

2       At step four, the ALJ must consider the functional limitations imposed by the claimant's

3   impairments and determine the claimant's Residual Functional Capacity (RFC).   In assessing the

4   Plaintiff's RFC, the ALJ must consider the whole record, and explain how he weighs the medical

5   evidence and testimony.  SSR 96-5p, available at 1996 WL 374184.  If the claimant retains the

6   capacity to perform his or her past relevant work, defined as work the claimant has performed in

7   the past fifteen years (see 20 C.F.R. § 404.1560(b)(1)) the claimant is not disabled.  20 C.F.R. §

8   404.1520(f).

9       If the ALJ determines that the claimant can no longer perform past relevant work, the ALJ

10   at step five must consider whether the claimant can perform other work in the national economy.

11   20 C.F.R. § 404.1520(g).  If the claimant can perform other work in the national economy, then

12   the claimant is not disabled.

13 **III.     The ALJ's Decision**

14       At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

15   since his alleged onset date of disability.  (AR at 16, 24.)  At step two, he found that Plaintiff had

16   the following severe impairments: sleep apnea, mild diabetes controlled by diet and medication,

17   and fibromyalgia.  (AR at 19, 24.)  At step three, the ALJ determined that Plaintiff's impairments

18   do not meet or medically equal any impairment listed in Appendix 1, Subpart P of the regulations.

19   (Id.)  The ALJ also found that Plaintiff's allegations regarding his limitations are not totally

20   credible.  (AR at 23, 24.)  At step four, the ALJ found that Plaintiff retains the ability to lift and

21   carry up to 10 pounds frequently and up to 20 pounds occasionally; he can sit, stand, and walk for

22   about 6 hours in an 8-hour day; and due to some fatigue and pain complaints, he would be limited

23   to no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, and

24   working at heights and around hazards.  (Id.)  The ALJ concluded that Plaintiff's RFC would

25   allow him to return to work as a reservation agent as he originally performed that job, and that he

26   likely would be able to teach as well.  (Id.)  Accordingly, the ALJ found that Plaintiff is "not

27

disabled" within the meaning of the regulations.  (Id.)

Plaintiff assigns error to the ALJ's step one determination of his severe impairments, the ALJ's step three assessment of Plaintiff's RFC, and the ALJ's step four assessment of Plaintiff's ability to perform past relevant work.  (Dkt. No. 12 at 8.)

### III.     The ALJ Properly Rejected Certain Evidence

Plaintiff argues that the ALJ erroneously rejected his testimony by essentially finding him "not credible and therefore not disabled."  (Dkt. No. 12 at 14.)  This mischaracterizes the ALJ's RFC analysis.  The ALJ first found the Plaintiff's subjective testimony of his own limitations not entirely credible.  (AR at 23.)  The ALJ then adopted the findings of the Disability Determinations Services (DDS) medical consultants.  These consultants reviewed Plaintiff's physical and mental impairments and concluded that Plaintiff had no limitations that would be disabling under the Social Security Act.  (AR at 23.)  For the reasons below, the Court concludes that this was not error.

### A.     Plaintiff's Subjective Symptom Testimony

Plaintiff alleged that his functional limitations included fatigue, aches and pain, and difficulty in concentration and with fine motor manipulation.  (AR at 83, 103.)  The ALJ properly concluded that Plaintiff's testimony as to his own limitations was "not consistent with the evidence presented and the factors set out in SSR 96-7p."  (AR at 21.)

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  Morgan, 169 F.3d at 599 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).   Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  Id.

The Social Security Administration requires that ALJs consider additional factors in

ORDER — 4

assessing credibility.  These additional factors include: (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also S.S.R. 96-7p at 3-4.

In this case, the ALJ gave four specific reasons for discounting Plaintiff's testimony: (1) that Plaintiff maintained a "very active lifestyle," (2) that Plaintiff's allegations were not supported by the medical evidence, (3) that Plaintiff failed to follow a prescribed course of treatment, and (4) evidence of Plaintiff's motive for secondary gain.  The Court finds that these reasons are sufficiently specific and are supported by substantial evidence on the record.

### 1.    Plaintiff's Daily Activities

As Plaintiff argues, the Ninth Circuit has "'repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities...does not in any way detract from her credibility as to her overall disability.'"  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).  However, if a claimant engages in numerous daily activities involving skills that could be transferred to a work environment, the ALJ may discredit the claimant's allegations upon making specific findings related to those activities.  Fair, 855 F.2d at 603; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (evidence that claimant was able to care for her own personal needs and to cook, clean and shop, and take care of her own personal finances and that of her nephew sufficient to uphold ALJ's adverse credibility determination).

In assessing the Plaintiff's daily activities, the ALJ noted that Plaintiff is able to work in a call center for four hours a day, one day a week; able work up to three hours a day on his computer scheduling conferences; able to shop, run errands and drive his mother to and from

ORDER — 5

doctors appointments two to four days a week; and able to manage his mother's finances.  (AR at 21.)  Although Plaintiff asserts in his brief that work as an airline reservationist is done standing and requires "fine motor manipulation" beyond his current capacity, Plaintiff gave testimony that his prior work was done sitting down and that he is able to do computer and phone work on a regular basis as part of his volunteer activities.  (AR at 448-51.)  Therefore, the ALJ did not err in discounting Plaintiff's testimony of his own limitations based on Plaintiff's daily activities.

    ## 2.      Medical Evidence

    The ALJ also stated that the medical evidence does not support Plaintiff's allegations of totally disabling pain and fatigue.  While subjective pain testimony cannot be discredited on the sole ground that it is not corroborated by objective medical evidence,  medical evidence is a relevant credibility factor in evaluating the severity of pain and its effects.  Rollins, 261 F.2d at 857.  Here, the ALJ specifically identified the medical evidence that undermined the claimant's complaints.

    First, the ALJ noted that no treating or examining doctor had restricted work on more than a temporary basis.  (AR at 21.)  The record shows that when work was restricted, the recommendation was not based on restricting the type of work but only the timing of it, from night to day shift, and was based not on objective findings but on claimant's own subjective claims of fatigue.  (AR at 278, 317.)  The ALJ also noted that, contrary to Plaintiff's testimony, the medical records indicated that physical therapy relieved Plaintiff's symptoms and increased his functioning ability.  (AR at 292, 290.)

    Further, the ALJ stated that Plaintiff has lived with his fatigue and fibromyalgia for 10 or 11 years, and these conditions did not prevent him from working a regular day shift schedule during that time.  (AR at 20.)  Although Plaintiff points to the medical record from Dr. Kaeley as indicating that Plaintiff's pain and fatigue was progressively worse from August 2003 to July 2004 (Dkt. No. 12 at 19), the ALJ noted that these findings were based purely on the Plaintiff's

1  subjective reports.  See Batson v. Commissioner of the Soc. Sec. Admin., 359 F.3d 1190, 1195

2  (9th Cir. 2004) (an ALJ may discredit the opinions of a treating physician that are unsupported by

3  objective medical findings).  Dr. Kaeley's objective findings indicated some tender points, but no

4  range of motion restrictions, and that Plaintiff's pain improved with medication.  (AR at 18, 188-

5  98.)  The ALJ also noted that the doctor's treatment plan was increased exercise and activity, and

6  did not include restrictions on work activity.  (Id.)

7       Resolutions of conflict between plaintiff's allegations and the medical evidence are

8  functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  Thus, the Court finds that the

9  ALJ's evaluation of Plaintiff's credibility in light of the medical evidence was supported by

10  substantial evidence.

11       **3.      Failure to Follow Treatment**

12       The ALJ also discredited Plaintiff's testimony on the grounds that Plaintiff refused physical

13  therapy to help his fibromyalgia symptoms and that he failed to test his blood sugar and receive

14  acupuncture to help control his diabetes.  An unexplained or inadequately explained failure to

15  follow a prescribed treatment can be a legitimate reason for not finding a claimant credible, on the

16  basis that it undermines subjective claims of debilitating impairments.  Fair, 885 F.2d at 603.

17  Medical records do indicate that Plaintiff explained that he failed to test his blood sugar and

18  receive acupuncture treatments because of his financial constraints.  (AR at 21, 281, 284.)  The

19  ALJ provided no reason why this is an inadequate explanation.  Therefore, the Court finds that this

20  reason is not supported by substantial evidence.

21       However, the ALJ noted that although Plaintiff refused a physical therapy referral in 2005,

22  indicating that it had not helped him in the past, this statement is contradicted by the medical

23  records from his physical therapy in 2003, indicating improvements in his fatigue, flexibility, and

24  strength with treatment.  (AR at 22.)  Plaintiff's medical records show that his treating physicians

25  consistently recommend physical therapy and exercise to control Plaintiff's fibromyalgia

26

27

ORDER — 7

symptoms–a course of treatment that Plaintiff has consistently rejected.  (AR at 189, 191, 193, 195-98, 260, 266.)  There is no explanation on the record for this failure.  Therefore, the Court finds that this reason is supported by substantial evidence.

### 4.       Motive for Secondary Gain

Finally, the ALJ noted evidence of secondary gain.  Exaggeration of symptoms for secondary gain is a valid credibility determination.  <u>Matney v. Sullivan,</u> 981 F.2d 1016, 1020 (9th Cir. 1992) (well-documented motivation to obtain disability is a specific finding supporting credibility determination).  The ALJ stated that Plaintiff was already retired from teaching when he became employed with Alaska Airlines.  (AR at 22.)  Plaintiff testified that he took the job to fill in time until he reached Social Security retirement age, but the 3:00 to 11:00 p.m. schedule aggravated his fatigue and pain.  Plaintiff's medical records at the time of his disability request from Alaska Airlines indicate his motivation to obtain some form of disability coverage.  (AR at 279, 281, 283, 285, 313, 315.)  The Court finds that his reason is also supported by substantial evidence.

### B.       Opinions of Treating Physicians

After finding the Plaintiff's subjective testimony not entirely credible as to his own limitations, the ALJ adopted the findings of the state DDS medical consultants as to Plaintiff's functional capacity.  Plaintiff argues that the ALJ improperly disregarded the opinions of his treating physicians in making this RFC determination.  Dr. Buchwald, Plaintiff's doctor at the Harborview Chronic Fatigue Clinic, stated in a December, 2002 letter to Alaska Airlines that "Mr. Nakayama feels his pain has been increased in the late afternoon," and requested that he be moved to the day shift.  (AR at 278.)  Dr. Endow, treating Plaintiff for diabetes and fibromyalgia at Virginia Mason, opined in a June, 2003 letter to Alaska Airlines that Plaintiff is "not able to function normally," and should be granted "temporary disability status" based on his medical conditions.  (AR at 317.)  The Court finds that the ALJ did not err in discrediting these opinions

and adopting the findings of the DDS physicians in calculating the Plaintiff's RFC.

Generally, the medical opinion of a treating physician is entitled to special weight.  When the ALJ wishes to disregard the treating physician's opinion, "he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence."  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  A non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record supports those findings.  Morgan, 169 F.3d at 600-601; Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Here, the ALJ stated that Dr. Buchwald's letter was written at the Plaintiff's request and was not based on objective findings, but on the Plaintiff's own subjective claims.  (AR at 21, 278-79, 281, 283.)  If a treating doctor's opinion is premised to a large extent upon the claimant's own accounts of his symptoms and limitations, it may be disregarded when those complaints have been properly discounted.  Morgan, 169 F.3d at 601.  The Court finds that the ALJ's credibility determination was based on clear and convincing reasons supported by substantial evidence.

The ALJ also noted that these claims were not consistent with a clinic treatment note from the same time that Plaintiff requested a disability letter, stating that the Plaintiff's symptoms had improved and he was looking for full-time, day-shift work.  (AR at 21, 278.)  Contradictions between a doctor's opinion of claimant's abilities and that doctor's clinical notes of the claimant's abilities is a clear and convincing reason for not relying on the doctor's opinion.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Finally, the ALJ stated that Dr. Endow did not provide a physical assessment and his physical examinations were mostly within normal limits.  (AR at 21.)  As already stated, an ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings.  See Batson, 359 F.3d at 1195.  For these reasons, the Court finds that the ALJ did not err in evaluating the opinions of Plaintifff's treating physicians.

**III.    The ALJ's Other Findings are Supported by Substantial Evidence**

1  **A.    Plaintiff's Severe Impairments**

2      At step two, the ALJ found that Plaintiff's sleep apnea, mild diabetes and fibromyalgia are

3  in combination severe within the meaning of the regulations.  (AR at 19.)  Plaintiff argues that the

4  ALJ failed to properly assess his severe impairments with regard to Plaintiff's Gender Identity

5  Disorder and Dysphoria,[1] Chronic Fatigue Syndrome, Depression, Peripheral Neuropathy, severe

6  hearing loss and impairments to his vision, and hyperlipidemia (high blood pressure).[2]  (Dkt. #12 at

7  9.)  The Court finds that the ALJ's finding that Plaintiff's severe impairments were limited to sleep

8  apnea, mild diabetes, and fibromyalgia is free from legal error and supported by substantial

9  evidence.

10     Plaintiff has the burden of proving that his impairments are severe.   20 C.F.R. §

11  404.1520(c).  An impairment or combination of impairments can be found "not severe" only if the

12  evidence establishes a slight abnormality that has "no more than a minimal effect on an  individual's

13  ability to work."  SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

14  SSR 85-28).   Basic work activities are the abilities and aptitudes necessary to do most jobs,

15  including (1) physical limitations such as walking, standing, sitting, lifting, pushing and pulling; (2)

16  capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering

17  simple instruction (4) use of judgment; (5) responding appropriately to supervision, co-workers

18  and unusual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§

19  404.1521, 416.921.

20

21  ————————————

22     [1]Plaintiff broadly identified dysphoria as one of his impairments, but the medical record more specifically
    refers to gender identity dysphoria.  (AR at 151, 297, 302, 315, 434.)  Gender dysphoria, or being uncomfortable with
23  one's  assigned gender, is a symptom of gender identity disorder. See American Psychiatric Association: Diagnostic
    and Statistical Manual of Mental Disorders (4th ed., text revision 2000) (DSM-IV-TR).  Therefore, the Court concludes
24  that gender dysphoria is encompassed in the ALJ's assessment of Plaintiff's gender identity disorder.

25     [2]The Court notes that Plaintiff includes fibromyalgia, NIDDM (Non-Insulin Dependent Diabetes Mellitus),
    diabetes, and obstructive sleep apnea on the list of impairments that the ALJ allegedly failed to evaluate.  However,
26  these conditions were clearly considered by the ALJ, as evidenced by his findings that Plaintiff has sleep apnea, mild
    diabetes controlled by diet and medication, and fibromyalgia, and that the combination of these impairments is "severe"
27  within the meaning of the regulations.  (AR at 19.)  Therefore, these impairments are not discussed here.

ORDER — 10

1      Contrary to the Plaintiff's contention, the ALJ properly assessed the Plaintiff's

2  impairments.  First, although the ALJ's decision makes no mention of the Plaintiff's

3  hyperlipidemia, Plaintiff did not allege that hyperlipidemia was one of his impairments at the

4  administrative level.  (AR at 67-76, 115-125.)  Further, Plaintiff's hyperlipidemia is treated with

5  Zocor, and there is no evidence on the record indicating that this impairment limited Plaintiff's

6  work activities in any way.  (See AR at 302, 308, 315, 369, 434.)

7      Second, the ALJ determined that, although Plaintiff has been treated for chronic fatigue,

8  "the record shows none of the indicia indicated in SSR 99-2p, which outlines the criteria for

9  chronic fatigue syndrome."  (AR at 18.)  Other than generally referring to medical records from

10 certain doctors who identified chronic fatigue or fatigue as one of his conditions, Plaintiff makes no

11 argument that those records contain medical signs or laboratory findings of the type described in

12 SSR 99-2p that would establish his fatigue as a medically determinable impairment under the Act.

13 See SSR 99-2p at *2-4 (listing examples of medical signs or laboratory findings).

14      Here, the record neither shows that other causes for Plaintiff's fatigue have been ruled out,

15 nor does it show that Plaintiff concurrently exhibited at least 4 or more of the SSR 99-2p

16 symptoms during 6 or more consecutive months.  (See AR at 259-293, 317, 320, 428.)  In fact, the

17 record shows that in July 2002, a treatment provider from the Chronic Fatigue Clinic at

18 Harborview Medical Center opined that Plaintiff would "have improvement in his insomnia, *fatigue*

19 and pain after his surgery to address the obstructive sleep apnea."  (AR at 285 (emphasis added).)

20 Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's fatigue.

21      Third, the ALJ noted that mild peripheral neuropathy, hearing loss, and eye conditions with

22 retinal detachment were indicated on the record.  The ALJ also noted that no examining or treating

23 physician has reported that any of these conditions interfere with Plaintiff's ability to function in an

24 adequate manner, and concluded that these conditions "are of no significant medical-vocational

25 consequence, or they have resolved."  (AR at 18.)  The record shows that Plaintiff testified at

26 hearing that his neuropathy does not interfere with his ability to lift or write.  (AR at 456-57.)

27

ORDER — 11

1  Plaintiff also testified that since he stopped working, he is able to work the phones of a call center

2  for four hours weekly.  (AR at 499.)  Further, the most recent record for Plaintiff's vision, dated

3  December 7, 2005, lists Plaintiff's visual acuity with corrective contact lens on left eye as 20/20,

4  and indicates a plan to continue prescribed topical agents for glaucoma in Plaintiff's right eye.  (AR

5  at 435.)

6       Finally, Plaintiff alleges that the ALJ erred in finding that he had no severe mental

7  impairments.  (AR at 19-20.)  Plaintiff claims that the ALJ "failed to properly evaluate him under

8  the diagnosed impairment of depression/ anxiety," and that "hormonal therapy, gender

9  resassignment has contributed to his overall emotional impairments."  (Dkt. No. 12 at 10, 12.)

10  Plaintiff testified at hearing that his gender identity disorder causes him stress which in turn

11  exacerbates his fibromyaliga.  (AR at 459.)  However, Plaintiff's statement of symptoms alone is

12  not sufficient to meet the regulations definition of a severe impairment.

13       To the contrary, Dr. Price, who performed a consultative evaluation of Plaintiff on January

14  14, 2004, stated that Plaintiff was "not particularly limited by psychological factors, nor would

15  they likely interfere with his ability to attend to the workplace in a regular fashion."  (AR at 153.)

16  Dr. Price also stated that Plaintiff  "seems to be adjusting to his gender identity disorder and I

17  doubt that it is particularly problematic for him at this time."  (AR at 153.)  Likewise, the ALJ

18  noted that the DDS assessment indicated that Plaintiff's mental impairment resulted in only a mild

19  degree of functional limitation.  (AR at 20.)  Concluding that the DDS assessment was supported

20  by Dr. Price's opinion and the evidence on the record, the ALJ properly adopted the DDS finding

21  that Plaintiff has no severe mental impairment.  See Morgan, 169 F.3d at 600-601; Magallanes,

22  881 F.2d at 752.

23  **B.**    **Plaintiff's Ability to Perform his Past Relevant Work**

24

25       Plaintiff argues that the ALJ erred by finding that he could return to his past relevant work.

26  Plaintiff contends that the physical evaluation performed by Robert Hoskins, M.D., the DDS

27

physician, limits Plaintiff's ability to sustain work.  (Dkt. No. 12 at 16.)  Plaintiff also alleges that work as an airline reservationist is performed "standing 8 hours a day."  (Id.) However, as already stated, this conflicts with Plaintiff's testimony at hearing that his work was performed sitting down. (AR at 448.)  Further, Dr. Hoskins' functional assessment opined that Plaintiff is still capable of performing light work, with "precautions for heights and hazards due to alleged fatigue."  (AR at 161.)

Other than pointing to his list of alleged impairments and the letters to Alaska Airlines, which the Court has already concluded were properly evaluated by the ALJ, Plaintiff has failed to identify any evidence that demonstrates he is unable to perform his past relevant work.  The Court concludes that the ALJ properly determined that Plaintiff is able to perform his past relevant work.

**CONCLUSION**

The Commissioner's determination that Plaintiff is not disabled under the Social Security Act is free from legal error and supported by substantial evidence on the record.  The Commissioner's decision is AFFIRMED.

Dated: March  th, 2008.


 //s// Marsha J. Pechman
Marsha J. Pechman
U.S. District Judge

ORDER — 13